UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARMELO ANDINO SANCHEZ,

    Petitioner,

v.                                               CASE NO. 8:14-cv-2080-T-36AAS

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**O R D E R**

THIS CAUSE comes before the Court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Florida state prisoner, Carmelo Andino Sanchez ("Petitioner"), (Dkt. 1), with a supporting memorandum of law (Dkt. 8). Respondent, Secretary of the Florida Department of Corrections, filed a response in opposition to the petition (Dkt. 10), which is accompanied by the appendix record of Petitioner's state court proceedings (Dkt. 11).[1] Petitioner filed a reply to the response (Dkt. 14). Having carefully considered the parties' submissions, the Court finds that the petition for writ of habeas corpus is due to be denied.

**Procedural History**

On April 16, 2009, Petitioner pleaded no contest in the Thirteenth Judicial Circuit Court in Hillsborough County, Florida, to home invasion robbery, carrying a concealed weapon, possession of cocaine, and obstructing an officer without violence. (Exhibit ("Ex.") 4B, C, E, F). In a separate

---

[1] All exhibits cited throughout this Order can be found in the appendix record of Petitioner's state court proceedings, docket entry 11.

case, he also pleaded to armed burglary with assault or battery, and two counts of armed robbery. (*Id.*). He faced life imprisonment on the burglary charge and 30 years in prison on the home invasion robbery charges alone. (Ex. 4L). The judgments and sentences were filed on July 6, 2009. (Ex. 4C, F). Then, Petitioner was resentenced on Sept. 14, 2009, after a mitigation motion. (Ex. 4D, F). On that date, he received a sentence of 20 years in prison followed by 10 years of probation. (*Id.*). Petitioner did not file a direct appeal. (Ex. 4A, p.2).

On June 3, 2010, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure, and then filed two supplemental motions. (Exs. 2, 3, 5, 6). He raised four grounds for relief: 1) the use and consideration of a BB gun as a weapon resulted in an illegal sentence; 2) the offenses were incorrectly scored; 3) the offenses violate section 921.002, Florida Statutes, and *Apprendi*[2] and *Blakely*[3]; and 4) ineffective assistance due to failure to present mitigating circumstances at sentencing, including medical evidence of Defendant's health ailments. (Ex. 6A, 4A).

The trial court initially dismissed Petitioner's fourth ground with leave to amend. (Ex. 6). Petitioner then filed an amended claim. (Ex. 7). On April 2, 2012, the trial court ordered the State to respond to all claims (Ex.8), and on July 11, 2012, the State did so (Ex. 4G). On June 25, 2013, the trial court issued its final order summarily denying all of the claims without an evidentiary hearing. (Ex. 4A).

Petitioner filed a notice of appeal. (Ex. 9). On appeal, he filed an initial brief (Ex.14) and the State did not file an answer brief, as it was a summary appeal. (Ex. 12). On March 28, 2014,

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[3] *Blakely v. Washington*, 542 U.S. 296 (2004).

the Second District Court of Appeal affirmed with a *per curiam* opinion. (Ex. 11). The mandate was issued April 24, 2014. (Ex. 10).

## The AEDPA Standard of Review

Petitioner timely filed the instant petition for writ of habeas corpus. (*See* Dkt. 10, p. 3, ¶ 3). The petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Section 104 of the AEDPA amended 28 U.S.C. § 2254 by adding the following provision:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Section 2254, as amended by the AEDPA, establishes a highly deferential standard for reviewing state court judgments. *Parker v. Secretary, Dep't of Corr.*, 331 F.3d 764 (11th Cir. 2003) (citing *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002)). Petitioner filed his petition for writ of habeas corpus after the enactment of the AEDPA and, thus, section 104 applies to his petition.

Review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence

at that same time, *i.e.*, the record before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1401 (2011). In addition, section 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson*, 300 F.3d at 1342. The federal court will presume the correctness of state court findings of fact, unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Having carefully considered the parties' submissions, the Court finds that Petitioner fails to meet his burden under the AEDPA standard inasmuch as the state court decisions on his claim were neither contrary to, nor an unreasonable application of, clearly established federal law.

## DISCUSSION

### Grounds One and Two

In Ground One, Petitioner claims that his sentence of 20 years in prison followed by 10 years of probation is illegal on the basis that the overall 30-year sentence exceeds the *Apprendi* and *Blakely* definition of statutory maximum. He argues that the trial court's findings of facts and imposition of sentence after his plea violated *Apprendi* and *Blakely*, adding that he did not admit the specific facts required to sentence him. In Ground Two, Petitioner claims that the trial court erroneously enhanced the degree of felony,[4] and this was also a violation of *Apprendi* and *Blakely*. Specifically, he claims that the trial court made an independent finding that the BB gun constituted a deadly weapon, but that there was no jury finding that he used the BB gun as a deadly weapon, he did not acquiesce to judicial fact-finding, nor did he admit facts that would permit the sentence for a crime involving a deadly weapon.

---

[4]In Florida, simple robbery is a second-degree felony. If the robber carries a "firearm or deadly weapon" during the robbery, the offense increases to a first-degree felony. § 812.13(2), Florida Statutes (2008) .

A review of the record of Petitioner's state court proceedings reveals that the trial court properly denied these claims in its order denying Petitioner's Rule 3.800(a) motion. (Ex.4A). The trial court found that pages 7 and 8 of the plea transcript included the factual basis: "This particular Defendant...pointed what appeared to be a firearm, but was later found to be a pellet gun at one of the victims....One of them he hit over the head with the pellet gun....Law enforcement had to physically throw him to the ground where they were able to recover the pellet gun...and a six-inch knife they also found on his person." (Ex. 4A, p.3-4). The State argued that under case law, this factual basis would have been sufficient to establish the use of the pellet gun as a deadly weapon. (Ex. 4A, p.4). *See Mitchell v. State*, 698 So. 2d 555 (Fla. 2d DCA 1997) (holding that a BB gun used as a bludgeon that creates a gash on victim's head could be found to be a deadly weapon so as to support aggravated battery conviction), *approved*, 703 So. 2d 1062 (Fla. 1997); *see also, Goodwin v. State*, 68 So. 3d 309 (Fla. 2d DCA 2011) (evidence supported finding that low-velocity BB gun used during robbery was a deadly weapon; gun would fire BBs, pellets, or darts and came with danger warnings, and weapon was operable and capable of penetrating cardboard from close range).

The trial court reasonably found that the State's response was persuasive. (Ex. 4A, p. 4). The court pointed out that, at the conclusion of the factual basis, counsel stated that he did not have any deletions, additions, or modifications to the factual basis and, therefore, Petitioner's plea accepted the facts as true. (Ex. 4A, p. 4.) The trial court found that the factual basis during the plea was sufficient to support his conviction for robbery home invasion and the sentence was not illegal. (Ex. 4A, p. 5). It also found that with respect to the other robbery incident from the other case, which occurred three days earlier, the factual basis included a statement that Petitioner entered the victims' residence with "what appeared to be a handgun" and ordered both victims to the ground.

(*Id*.). Petitioner and counsel also accepted this factual basis during the plea. (*Id.*). The gun that Petitioner possessed in the additional case (which occurred first, chronologically) was not recovered, but during the second home invasion three days later, Petitioner was apprehended exiting the residence. (Ex. 4h, p.7-8). The court found a sufficient factual basis for both cases. (Ex. 4A, p.5). This issue was appealed to the Second District Court of Appeal and then affirmed. (Ex. 11). As Respondent correctly argues, a claim presented to a State court and denied may be presumed to have been adjudicated on the merits. *Harrington v. Richter*, 131 S.Ct. 784-85 (2011). The state trial and appellate courts denied Petitioner's claims on adequate legal grounds, and there was no erroneous application of federal law.

Respondent emphasizes that Petitioner entered a plea and, thus, the judge did not actually need to "find" any facts as Petitioner effectively stipulated to a sufficient factual basis when he pleaded. In *Blakely*, the Supreme Court struck down a Washington state sentencing proceeding in which the judge imposed punishment that the jury's verdict alone did not allow. The *Blakely* court explained that a sentence may be imposed by a judge if it is based solely on the "facts reflected in the jury verdict or admitted by the Petitioner." *Id.* at 2537. Here, Petitioner's sentence was based solely upon the facts admitted by him as part of his plea agreement. He pleaded to these counts, as charged, and admitted the factual basis. *See Chavez-Sanchez v. U.S.*, 2006 WL 3359677 (M.D.Ga. 2006) (rejecting a similar claim that the Petitioner's sentence was "unlawfully enhanced by virtue of the findings made by the court by the preponderance of the evidence at my sentencing hearing, without being admitted by me, or being charged in my indictment.").

Moreover, Respondent properly asserts that Petitioner entered into a negotiated plea agreement and did not challenge the voluntariness of his plea in a timely motion to withdraw plea.

*See Robinson v. State*, 373 So. 2d 898, 902 (Fla. 1979) ("[A]n appeal from a guilty plea should never be a substitute for a motion to withdraw a plea.... issues concerning the voluntary or intelligent character of the plea... should first be presented to the trial court in accordance with the law and standards pertaining to a motion to withdraw a plea."). And Petitioner did not file a direct appeal. Petitioner's voluntary plea, therefore, waived any potential defenses and any constitutional claims relative to the state's evidence, or to technical defects, including any defense challenging whether the gun was a deadly weapon. *See McMann v. Richardson*, 397 U.S. 759 (1970) (holding Petitioner who pleaded guilty was not entitled to federal review of claim his confession was obtained unconstitutionally); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam) (a knowing and voluntary guilty plea waives all constitutional challenges to a conviction). The waiver effect of his plea also encompassed any claims of ineffective assistance concerning decisions regarding the State's evidence and raising potential defenses. *Wilson*, 962 F.2d at 997 (pre-plea ineffectiveness waived).

In sum, Petitioner's sentences did not violate *Appendi* and *Blakely* because Petitioner admitted the facts that demonstrated, under Florida law, he committed the robberies with a deadly weapon. The state post-conviction court's factual findings were correct, a presumption Petitioner does not overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Further, giving the required deference to the state court's holdings, Petitioner does not show the state court's decision resulted in an unreasonable application of clearly established federal law. Accordingly, Grounds One and Two warrant no relief.

## Ground Three

In Ground Three, Petitioner claims that his plea was involuntary due to lack of information, misadvice, and misinformation from his defense attorney. Specifically, he argues that his pleas cannot be deemed knowingly and intelligently entered when he was not informed about the essential elements under *Apprendi* and *Blakely*. Petitioner claims that if he had been informed of the deadly weapon element of the robbery with a weapon charges, he would not have pleaded. However, Respondent correctly argues that it is unlikely that counsel would have been successful in a challenge to the deadly weapon element, and it would not have materially reduced Petitioner's total sentence exposure based on the multiple charges in multiple cases. Petitioner was aware that his charges included deadly weapon and firearm elements because those terms were read to him.

Under an AEDPA review of such claims, a petitioner must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668 (1984).[5] The burden is on a petitioner to demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 686-88. In order to establish an ineffective assistance of counsel claim, a petitioner must demonstrate: 1) deficient performance by counsel and 2) prejudice to the defense. *Id.* at 687. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Sound tactical decisions within a range of reasonable professional competence are not vulnerable to collateral attack. *See, e.g., Weber v. Israel*, 730 F.2d 499, 508 (7th Cir.) (finding that choosing a defense is a matter of trial strategy), *cert. denied*, 469 U.S. 850 (1984); *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980), *cert.*

---

[5] It is clear that the two-part test articulated in *Strickland v. Washington*, applies to cases challenging pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Agan v. Dugger*, 835 F.2d 1337, 1340 n.6 (11th Cir. 1987), *cert. denied*, 487 U.S. 1205 (1988).

*denied*, 450 U.S. 934 (1981). Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Petitioner's claim fails to satisfy the two-prong test of *Strickland*.

Petitioner's use of the BB gun to bludgeon one of the victims can justify a finding of a deadly weapon under Florida case law. *See Mitchell*, 698 So.2d 555 (holding that a BB gun used as a bludgeon that creates a gash on victim's head could be found to be a deadly weapon so as to support aggravated battery conviction). Therefore, the undisputed facts were legally sufficient to support the conviction, and counsel's performance cannot be deemed deficient for failing to challenge them. Additionally, a BB gun can be a deadly weapon, even if it is not used as a bludgeon tool. *See Goodwin*, 68 So. 3d 309 (evidence supported finding that low-velocity BB gun used during robbery was a deadly weapon; gun could fire BBs, pellets, or darts and came with danger warnings on the box, and State presented evidence that the weapon was operable and capable of penetrating cardboard from close range). *See also Dale v. State*, 703 So. 2d 1045, 1047 (Fla. 1997) (conviction for armed robbery with a deadly weapon upheld where Petitioner entered a store, told the clerk "I got a gun" and raised his shirt displaying what looked like a .9mm Beretta pistol, but which was in fact an unloaded gas-operated BB or pellet gun with no gas or cartridge.); *Santiago v. State*, 900 So. 2d 710 (Fla. 3d DCA 2005) (evidence was sufficient to show that BB gun used during burglary was dangerous weapon); *Mitchell*, 698 So. 2d at 557 (evidence that the Petitioner handled a BB gun, which looked like a .22-caliber pistol, as if it was loaded and operable was sufficient to sustain

convictions for robbery and aggravated assault with a deadly weapon even though the BB gun was not loaded).

Counsel's performance will not be deemed deficient for his failure to advise Petitioner to litigate the deadly weapon element when such a challenge was not likely to succeed. It is also not reasonable to believe that Petitioner would have withdrawn his plea on such a weak legal basis. Petitioner was put on notice of the existence of a deadly weapon element through its inclusion in the Information, and during the plea colloquy. During the plea, the judge noted, "You're charged with burglary of a dwelling with an assault or battery, possessing a firearm." (Ex. 4h, p.4). "You're also charged with two counts of robbery with a firearm." (Ex. 4h, p.4). Furthermore, during the plea, Petitioner received this benefit as the State noted that "on counts two and three, the State will be changing that charge from a firearm to robbery with a deadly weapon. It's still a punishable by life offense, however there is no longer a ten-year minimum-mandatory." (Ex. 4h, p. 9).

Petitioner, therefore, not only received a benefit of reduced charges during his plea, but he was put on actual notice of the fact that firearms and deadly weapons were part of the charges, because those words were stated aloud. If Petitioner wished to contest those elements, he could have stopped the plea process at that time. Further, there is no prejudice inasmuch as it is not credible that Petitioner would have proceeded to trial rather than plead in order to challenge the deadly weapon element.[6] Even without the deadly weapon aggravation element, Petitioner would still face severe maximums even on basic robberies and burglaries, for the sum total of all his cases and counts. His different cases occurred on multiple dates and, thus, could be sentenced consecutively.

---

[6]The state post-conviction court found "it is inconceivable that [Petitioner] would have proceeded to trial. . . ." (Ex. 4a, pp. 11-12).

-10-

As Respondent asserts, the facts of these crimes were serious, and the victims were highly traumatized; Petitioner bludgeoned one during a violent home invasion. Thus, even without the deadly weapon elements, Petitioner was a violent, multiple-time offender who still faced a total exposure far exceeding the 20-year sentence he eventually got through counsel's mitigation strategy. There is no reasonable probability that Petitioner would have proceeded to trial, when case law supported the State's position that a BB gun may be a deadly weapon, and where Petitioner was clearly guilty of the underlying burglaries/robberies. He was apprehended red-handed, exiting the residence with a weapon. Nor would counsel be ineffective for failing to raise or litigate this issue under *Mitchell* and *Goodwin*, both of which are cases from the Second District and were controlling upon the trial court.

Even if Petitioner were somehow successful in arguing that the BB gun was not a deadly weapon, this would not have reduced his total exposure in any significant way due to the multiple counts he faced on multiple cases, making the decision to go to trial a bad gamble. Petitioner's plea removed the ten-year minimum-mandatory and successfully achieved mitigation. Furthermore, the trial court denied the underlying *Apprendi/Blakely* claim in its order denying Petitioner's 3.800(a) motion. (Ex. 2c). As such, Petitioner cannot establish ineffectiveness of counsel nor prejudice, because the facts that the State could have proven support a finding of that element. Petitioner cannot show that a challenge to the deadly weapon element was viable, nor that the issue would have been worth risking a trial on. Ground Three therefore does not warrant relief.

Any of Petitioner's claims not specifically addressed in this Order have been determined to be without merit.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment in favor of Respondent, terminate any pending motions, and close this case.

Additionally, the Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court allow Petitioner to proceed on appeal *in forma pauperis* because such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3). Instead, he will be required to pay the full amount of the appellate filing fee pursuant to 28 U.S.C. §§ 1915(b)(1) and (2).

**DONE AND ORDERED** at Tampa, Florida, on September 19, 2017.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES FURNISHED TO**:
Petitioner *pro se*
Counsel of Record